IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CEDRIC SCOTT,
#236991
                                    :
     Plaintiff,                     :
                                    :
vs.                                 :     CIVIL ACTION 14-308-CG-M
                                    :
ROBERT GOLDEN, *et al.,*
                                    :
     Defendants.                    :


REPORT AND RECOMMENDATION

     This action is before the Court on Plaintiff's Complaint,[1]
(Doc. 5), Defendants' Motion to Dismiss, (Doc. 31), Plaintiff's
Response in Opposition thereto, (Doc. 33), and Defendants'
Reply.  (Doc. 35).  After consideration, and for the reasons set
forth herein, it is recommended that Defendants' Motion be
granted, and Plaintiff's Complaint be dismissed with prejudice
for failure to state a claim upon which relief can be granted.

I.   Facts and Proceedings

     Plaintiff is currently incarcerated at Kilby Correctional
Facility; however the events for which he complains occurred
during his arrest, prior to his incarceration.  As Defendants,
Plaintiff names Officer Robert Golden ("Defendant Golden) and

_____

[1] After filing his original Complaint, (Doc. 1), on an outdated
form, Plaintiff was instructed to file on this Court's current
form, which he did on July 31, 2014.  (Docs. 3, 5).

Officer Jonathan Rabeau ("Defendant Rabeau").  The Court summarizes the facts as follows.

On July 10, 2013, Plaintiff was arrested by Prichard Police Officer Jonathan Rabeau and Officer James (not named as a defendant) on charges of "trafficking illegal drugs, escape III, possession of a control[led] substance, loitering, resisting arrest, disorderly conduct, and attempting to elude the police.[2] (Doc. 5 at 4).  During the course of his arrest, Plaintiff was handcuffed and placed in the back seat of the police car, and escorted to the police station.  (*Id.* at 4, 8).  En route to the police station, Plaintiff began complaining of chest pains to Defendant Rabeau and Officer James.  (*Id.* at 8).  Once they arrived at the station, the officers called the fire department to provide medical care to Plaintiff for his alleged chest pains.  (*Id.*).  Plaintiff contends the firefighters "spoke to [him] with vile language[, and] after he perceived their attitudes, [Plaintiff] told them that he didn't want any of there [sic] assistance, consequently causing Plaintiff to maintain complete silence from that point."  (*Id.*).  Having refused treatment, the firefighters left; Plaintiff states he

---

[2] The Court deducts from the record that Plaintiff was initially arrested for multiple serious felonies, including trafficking, possession of a controlled substance, loitering, and disorderly conduct.  It appears the remaining charges of escape III, resisting arrest and attempting to elude the police were added after the present altercation concluded.

continued to suffer chest pains and voiced his ongoing need for medical care to the officers present. (*Id.*). The "defending officers then told Plaintiff that he had missed his chance because the firefighters had tried to help him but he wouldn't allow them. Plaintiff then told the defending officers that the firefighters had a nasty attitude, so he did not trust them to help him, furthermore they wasn't [sic] trained medical practitioners, [to which] the officers [] stated 'O [sic] well." (*Id.*).

Plaintiff, thinking he was being treated unfairly by not getting adequate medical attention, quickly grew hostile and kicked out the "door window in the back seat of the police car from the inside. After a few kicks[,] the window burst out, and that's when Plaintiff started to shout out [sic] the car, 'I need medical attention! My chest hurt!'" (*Id.* at 9). About "six or seven officers ran out of the police station toward the car [and allegedly began] to mock [] Plaintiff with taunts and laughter." (*Id.*). Plaintiff cursed and spit at the officers causing Defendant Golden to take a "very hard object off his belt and [throw] it through the broken window into the back seat of the patrol car, it [sic] hitting Plaintiff in the mouth, knocking [him] unconscious for a few seconds and also knocking one of this teeth out and causing three of them to be knocked loose, and also pushing his gum line back." (*Id.*). Plaintiff

further states that, as he regained consciousness, he awoke to
Defendant Rabeau "spraying him with a can of mace (pepper spray)
through the window [until] Plaintiff was drenched in spray."
(*Id.*).  Plaintiff "cough[ed] and cr[ied] out to God" as other
officers mocked him.

The paramedics were called to the scene and they took
Plaintiff to U.S.A. Medical Center where he was treated with a
CAT scan, MRI, X-rays and stitches over the course of a few
hours.  (*Id.* at 9-10).  Plaintiff was released from medical care
and escorted by Defendant Rabeau and Officer James to Mobile
County Metro Jail ("Metro") where he was booked for the above-
mentioned list of criminal charges.  (*Id.* at 10).  Plaintiff
alleges internal affairs opened an investigation on the incident
documenting his injuries with photographs two days after he was
booked into Metro Jail custody.  (*Id.*).  Plaintiff states that
since the incident occurred, he has had to have three loosened
teeth removed due to the fact that they would not heal, and bone
"gristle" protruding out of his gums shaved down.  (*Id.*).
Plaintiff states there are USA Medical Center and Metro Jail
medical records to support his allegations, but he provides
records from neither facility to the Court.

Against Defendant Golden, Plaintiff alleges claims of
retaliation, deliberate indifference, and excessive force in his
individual and official capacity because "Defendant assaulted

Plaintiff while Plaintiff was secured in handcuffs and allowed lower ranking officer to assault him without entervening [sic] because Plaintiff kick [sic] the windows out." (Doc. 5 at 5). Plaintiff contends that Defendant Golden "should not have acted in such a callous indifference [sic] with a force not necessary do [sic] to the fact [that] Plaintiff was restrained in handcuffs to the back at the time and furthermore, Plaintiff was secured in the back of the patrol car multiple feet away from the Defendants. Therefore, Defendant should be held accountable for 'excessive force' that he used unnecessary [force] against the Plaintiff[.] Moreover, the Defendant allowed lower ranking officer Jonathan Rabeau to spray multiple burstes [sic] of pepper spray on Plaintiff for no just reason and did nothing to stop him, which puts Defendant well in the range of deliberate indifference." (Doc. 5 at 13-14).

Against Defendant Rabeau, Plaintiff alleges excessive force and retaliation in his individual and official capacity because "Defendant sprayed mase [sic] all over Plaintiff while he was secured in the back of the police car in handcuff [sic] because Plaintiff kicked windows out." (Doc. 5 at 5, 15). For relief, Plaintiff prays for "all of the damages in the amount of $999,999.96."

Defendants filed their Motion to Dismiss asserting that Plaintiff's Complaint is due to be dismissed because his

conclusory allegations are insufficient under the pleading standards of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Specifically, Defendants claim that Plaintiff fails to state a claim upon which relief can be granted, and the Complaint should be dismissed as such.  Defendants point to the "reasonable inference" standard set out by the Supreme Court in *Ashcroft,* which states that "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft* at 678.

Regarding Plaintiff's deliberate indifference to his serious medical needs claims, Defendants set out that Plaintiff must prove two components, objective and subjective components, to establish deliberate indifference: 1) that he experienced an objectively serious medical need and 2) that the officers acted with deliberate indifference to that need.  (Doc. 31-1 at 4). Applying these elements to Plaintiff's allegations, Defendants note that Plaintiff fails to state a claim since he admits multiple times in his Complaint that Defendants took numerous steps to secure medical care for him, even though he chose to refuse that medical care on at least one occasion.  Therefore, Defendants conclude that Plaintiff's medical care admissions

make liability for deliberate indifference to his serious
medical needs an impossibility.

Next, Defendants state that Plaintiff is unable to state
colorable claims for excessive force, and those claims should
also be dismissed pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure.  Defendants set out that excessive force
claims are governed by the Fourth Amendment's objective
reasonableness standard during an arrest.  This standard asks
whether the officers' actions are objectively reasonable in the
light of the facts and circumstances confronting them without
regards to their underlying intent or motivation.  Defendants
further set out multiple factors (discussed below) to be
considered when analyzing an excessive force claim and conclude,
based on those factors, that Defendants' use of force was indeed
objectively reasonable under the circumstances.  Therefore,
Defendants contend that Plaintiff fails to state a claim for
excessive force under the Fourth Amendment.

Defendants also analyze whether they are entitled qualified
immunity for their acts; however, since the Court concludes,
based on its research and analysis below, that Plaintiff fails
to state a claim upon which relief can be granted, the Court
will leave immunity unaddressed.

Plaintiff responded to Defendants' Motion to Dismiss by
asserting that the Court should apply the standard of review for

summary judgment motions to the pending Motion to Dismiss.
(Doc. 33).  Plaintiff also states that he filed an "Amended
Complaint so that the Court can see all of the facts" (Doc. 33
at 2); however, the Court notes that Plaintiff filed a Motion to
Amend his Complaint, (Doc. 34), without attaching a copy of the
proposed amendments, and his Motion to Amend was denied for that
reason.  (*See* Endorsed Order docket entry 36).  Thus, the Court
will use his original Complaint, (Doc. 5), to discern his
claims.

Plaintiff further contends that because Defendants "did not
submit the medical report, the arresting complaint or narrative,
and all the officer [sic] on the scene and their statements,"
the Court can in "no way draw[] all justifiable inferences[,
and] furthermore, the defendants have not stated that internal
affairs has pictures of the incident a day or three days later,
that was [sic] taken of the plaintiff at Metro Jail."  (Doc. 33
at 2).

Plaintiff continues, melding his arguments of deliberate
indifference, excessive force, failure to train, and failure to
protect/intervene altogether with his "less stringent standards
than formal pleadings drafted by lawyers" argument.  Plaintiff
concludes his response by rehashing his version of the
allegations.  Plaintiff argues that Defendants are not entitled

to qualified immunity, which the Court will disregard for the same reasons it disregards Defendants' immunity analysis.

Defendants replied to Plaintiff's Response reiterating their position that Plaintiff's Complaint fails to state a claim upon which relief can be granted because Plaintiff cannot show that Defendants were deliberately indifferent by disregarding Plaintiff's serious medical needs, or that increased physical injury occurred due to denial or delay of care on the part of Defendants.  (Doc. 35 at 2-3).  Defendants point out, and the Court agrees that Plaintiff admits to receiving timely medical care throughout his Complaint, and during the course of the incident.  (Doc. 5).  Defendants further point out that nowhere in Plaintiff's Complaint is there any allegation that Defendants failed to provide medical treatment for Plaintiff's chest pains, or that his chest pains worsened as a result of Defendants' alleged delay.

It is also noteworthy that Plaintiff does not state that he was treated by the paramedics or at USA Medical Center for chest pains; rather, he only received treatment for the injuries he sustained as a result of being subdued by the officers when he attempted to escape from the patrol car.  Defendants also make note that Plaintiff does not mention complaining of chest pains to any of the medical care providers, not even to the treating physicians at USA Medical Center.

Defendants also reiterate that their use of force in subduing Plaintiff from threatening them and escaping from custody was objectively reasonable within the well-established standard of use of force during arrest; and therefore, not in violation of the Fourth Amendment.

Lastly, the Court also notes that Plaintiff used the word, "retaliation" in alleging his claims against Defendants, (*see* Doc. 5 at 5); however, Plaintiff does not make any allegations that he has been retaliated against by Defendants or any other state official for the filing of this lawsuit.  Thus, the Court will not address retaliation herein.

## II.  Motion to Dismiss Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).  Factual allegations, on the assumption that all allegations in the complaint are true, must be enough to raise a

right to relief above the speculative level and state a claim for relief that is plausible on its face.  *Id.* at 555, 570.

The Court accepts all facts as true and limits its consideration to the pleadings and exhibits attached thereto. *Abraham v. Greater Birmingham Humane Soc'y, Inc.,* No. 2:11-CV-4358-SLB, 2014 WL 1043230, *1 (N.D.Ala. Mar. 17, 2014)(*citing Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000)(citation omitted).  All reasonable inferences are drawn in favor of the plaintiff; however, unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.  *Abraham,* 2014 WL 1043230 at *1 (*citing Dalrymple v. Reno,* 334 F.3d 991, 996 (11th Cir. 2003)(citation omitted).

### III. Discussion

#### a. Deliberate Indifference to Serious Medical Need

Plaintiff complains that he was denied medical care for the chest pains he complained of while restrained in the back of the patrol car.

"Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."  *Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir. 1996).  "However, the applicable standard is the

same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id.* The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee,* 405 Fed. Appx. 456, 458 (11th Cir.2010) (citing *Mann v. TaserInt'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009)).

To satisfy the first objective element, Plaintiff must prove his condition was, in fact, a serious medical need. "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee,* 625 F.3d 1313, 1317 (11th Cir.2010) (internal quotations omitted). "To satisfy the subjective element of [a] deliberate indifference [claim, a] ... Plaintiff must prove three subparts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum,* 422 F.3d 1265,

1272 (11th Cir.2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant "'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference'")(quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, (emphasis added in *Bozeman)); see also Townsend v. Jefferson Cnty.,* 601 F.3d 1152, 1158 (11th Cir. 2010). "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley,* 182 F.3d 1248, 1257 (11th Cir. 1999).

In determining whether a delay in treatment rises to the level of deliberate indifference, relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1327 (11th Cir. 2007). "Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991)(citation omitted).

For the sake of this analysis, the Court will assume without concluding that Plaintiff's chest pains constitute a serious medical need, which, if left untreated, would pose a substantial risk of serious medical harm. *Farrow,* 320 F.3d 1235, 1243.

Turning to the second element, it is undisputed that Defendants were aware and subjectively knew of Plaintiff's chest pains. However, Plaintiff is sorely unable to prove that Defendants disregarded Plaintiff's chest pains, or that they did so with more than gross negligence.

Plaintiff admits that once he informed Defendants of his chest pains en route to the police station, that the fire department was called to treat him-- an admission that completely negates his claim for deliberate indifference. Summoning the fire department to treat Plaintiff is far from complete disregard and is certainly not disregard by more than gross negligence.

The fact that Plaintiff refused the care offered is of no consequence regarding Defendants' liability. Plaintiff's refusal was his own choice for which he has no legal remedy under 42 U.S.C. § 1983 as it applies to the Fourteenth Amendment. It is well-settled that disagreement regarding the method of care does not give rise to a constitutional violation. The course of treatment chosen by a medical official would be

such a classic example of a matter for medical judgment, that no
constitutional violation exists where an inmate and a medical
official merely disagree as to the proper course of medical
treatment.  *See Estelle,* 429 U.S. at 107; *Harris,* 941 F.2d at
1505.  Because Defendants made an immediate sincere attempt to
have Plaintiff treated for his alleged chest pains, and
Plaintiff admits such, it is impossible for him to prove that
Defendants acted with deliberate indifference to his serious
medical needs.

Furthermore, it cannot be concluded that the treatment
offered and received by Plaintiff was so grossly incompetent,
inadequate, or excessive as to shock the conscience or to be
intolerable to fundamental fairness.  *See Harris, supra,* p. 14.

It is also remarkable that Plaintiff had the physical
ability to kick out the windows of the patrol car, despite
having chest pain, which is typically accompanied by weakness,
shortness of breath, dizziness and disorientation.  *See Chest
pain symptoms,* http://www.mayoclinic.org/diseases-
conditions/chest-pain/basics/symptoms/con-20030540.  The Court
further notes, as do Defendants, that Plaintiff did not
complain, nor was he treated for, chest pains by the paramedics
or the medical team at U.S.A. Medical Center.  Also relevant is
that there is no indication in Plaintiff's Complaint that the
course of treatment provided him worsened his chest pains or

caused other life threatening symptoms to arise as a result of the care administered.  Plaintiff fails to present any verifiable medical evidence that Defendants should have provided him with a different course of treatment, and instead, only makes insufficient and unsupported statements that he wasn't being treated by "trained medical practitioners."  (Doc. 5 at 8).

Moreover, without verifiable medical evidence proving otherwise, Plaintiff's claims for deliberate indifference are pled in an unsupported and conclusory manner.  It is well settled that a conclusion cannot be taken as true.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment).

For these reasons, the Court concludes that Defendants did not act with deliberate indifference toward Plaintiff's serious medical needs, nor were they more than grossly negligent toward those needs.  Accordingly, Defendants' Motion to Dismiss for failure to state a claim is due to be granted and Plaintiff's medical care claims warrant dismissal with prejudice as such.

b. Excessive Force

Turning to Plaintiff's claims for excessive force, the Court likewise finds that Plaintiff fails to state a claim for such in his Complaint.  The Eleventh Circuit has held that "[t]he Fourteenth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro,* 284 F.3d 1188, 1197 (11th Cir. 2002).  Even if an officer has probable cause to arrest a person, the seizure must still be reasonable. *Tennessee v. Garner,* 471 U.S. 1, 8 (1985).  All claims that law enforcement officers have used excessive force- deadly or not- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under a reasonableness standard. *Barfield v. Rambosk,* 2015 WL 1754591, at *8 (M.D.Fla. Apr. 17, 2015)(citing *Graham v. Connor,* 490 U.S. 386, 395 (1989).

"An officer's use of force is excessive if his actions are not "objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Id.* (citation omitted).  Those circumstances must be viewed from the perspective of the law enforcement officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* "Courts do not sit in judgment to determine whether an officer made the best or a good or even a

bad decision in the manner of carrying out an arrest.  The court's task is only to determine whether an officer's conduct falls within the outside borders of what is reasonable in the constitutional sense . . . in the constitutional context, reasonableness- on a given set of facts- is a pure question of law." *Id.*

In determining if the use of force was reasonable, a court must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. *Hadley v. Gutierrez,* 526 F.3e 1324, 1329 (11th Cir. 2008)(citation omitted).  The nature and degree of force needed is measured by such factors as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. at 196.

Applying the factors listed above, it is undisputed that each factor occurred at some point during the entire altercation.  Therefore, it is plain to the Court that the degree of force needed to subdue Plaintiff was not disproportionate to the degree of force used and Defendants are not liable to Plaintiff for such.

Plaintiff admits he was arrested for multiple felonies including "trafficking illegal drugs, escape III, possession of

a controlled substance, loitering, resisting arrest, disorderly conduct, and attempting to elude police." (Doc. 5 at 4). Plaintiff also admits he became hostile toward the officers when he thought they weren't going to treat him for his alleged chest pains and he kicked out the windows of the patrol car. Plaintiff violently cursed and spit at the officers as they approached the car, requiring Officer Golden to subdue Plaintiff from a distance to protect himself and other officers from Plaintiff's violent behavior. Also undisputed is that Plaintiff was attempting a violent escape, which further satisfies the final factor in determining whether excessive force was used.

Furthermore, the Eleventh Circuit has consistently held that using pepper spray is reasonable where the plaintiff was either resisting arrest of refusing police request. *Vinyard v. Wilson,* 311 F.3d 1340, 1348 (11th Cir. 2002)("pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee)(citation omitted). It is indeed unfortunate that Plaintiff had to create a situation in which he would suffer such extensive and ongoing injuries; however, none of the facts at hand present with any remedy for use of excessive force under the Constitution via § 1983 of the Civil Rights Act.

For the forgoing reasons, the Court concludes Defendants' Motion is due to be granted and Plaintiff's claims for excessive

force against Defendants Rabeau and Golden are due to be dismissed with prejudice for failure to state a claim.

### IV.   Conclusion

After consideration of the pleadings, relevant motion and responses thereto, and based on the legal analysis set out above, the Court concludes that Plaintiff's Complaint fails to allege any factual content that allows this Court to draw the reasonable inference that Defendants are liable for the alleged misconduct. *Ashcroft, supra,* p. 6.  Therefore, it is recommended that Defendants' Motion be granted, and Plaintiff's Complaint be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order

based on unobjected-to factual and legal conclusions if the
party was informed of the time period for objecting and the
consequences on appeal for failing to object. In the absence of
a proper objection, however, the court may review on appeal for
plain error if necessary in the interests of justice."  11th
Cir. R. 3-1.  In order to be specific, an objection must
identify the specific finding or recommendation to which
objection is made, state the basis for the objection, and
specify the place in the Magistrate Judge's report and
recommendation where the disputed determination is found. An
objection that merely incorporates by reference or refers to the
briefing before the Magistrate Judge is not specific.

DONE this 8th day of July, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE